WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Narkas Radha, | No. CV-15-01400-PHX-ESW |
| Plaintiff, | |
| v. | **ORDER** |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Narkas Radha's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of her applications for disability insurance benefits and supplemental security income.  The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.  Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.  (Doc. 20).

After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 22, 23, 28),[1] the Court finds that the Administrative Law Judge's ("ALJ") decision

---

[1] LRCiv 7.1(b)(1) requires all original documents filed with the Clerk of Court to be in a "fixed-pitch type size no smaller than ten (10) pitch (10 letters per inch) or in a

contains harmful legal error.  For the reasons explained in Section II below, the decision is reversed and the case is remanded to the Commissioner of Social Security for further proceedings.

## I. LEGAL STANDARDS

### A.  Disability Analysis:  Five-Step Evaluation

The Social Security Act (the "Act") provides for supplemental security income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382.  To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 1382c(A)(3)(A).   The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months.  *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps.  20 C.F.R. § 416.920(a).  The claimant has the burden of proof regarding the first four steps:[2]

> **Step One**:  Is the claimant engaged in "substantial gainful activity"?  If so, the analysis ends and disability benefits are denied.  Otherwise, the ALJ proceeds to step two.

> **Step Two:**  Does the claimant have a medically severe impairment or combination of impairments?   A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step.  Otherwise, the ALJ proceeds to step three.

proportional font size no smaller than 13 point, including footnotes."  Compliance with LRCiv 7.1(b)(1) helps ensure that filings may be easily read by the Court and all parties. The Court requests that counsel file briefs that comply with LRCiv 7.1(b)(1).

[2]*Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity? 20 C.F.R. § 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:**  Does the impairment prevent the claimant from performing work which the claimant performed in the past?  If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis.  20 C.F.R. § 416.920(f).  Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[3]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience?  The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §416.920(g).  Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience.  *Id*.

**B.  Standard of Review Applicable to ALJ's Determination**

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  "Substantial evidence" is less than a preponderance, but more than a "mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)).  It is relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

---

[3]*Parra*, 481 F.3d at 746.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ, not the Court, is responsible for resolving conflicts and ambiguities in the evidence and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Finally, the Court considers the harmless error doctrine when reviewing an ALJ's decision. An ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff was born in 1966 in Iraq. (A.R. 160, 174). On October 29, 2010, Plaintiff was admitted to the United States as a refugee. (A.R. 160). On January 11, 2012, Plaintiff filed an application for supplemental security income. (A.R. 160-66). Plaintiff's application alleged that on January 1, 2012, Plaintiff became unable to work due to the following conditions: severe neck pain, pulmonary hypertension, diabetes, high cholesterol, high blood pressure, gastritis, joint pain, cyst in the kidneys, and poor vision. (A.R. 217). Social Security denied the applications in June 2012. (A.R. 86-89). In May 2013, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of

benefits.   (A.R. 91-93, 98-101).   Plaintiff sought further review by an ALJ, who conducted a hearing in January 2014.  (A.R. 35-62).  In his February 26, 2014 decision, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act.  (A.R. 15-28).

Plaintiff appealed the ALJ's ruling.   The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner.   (A.R. 1-6).   On July 23, 2015, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B.  The ALJ's Application of the Five-Step Disability Analysis

#### 1.  Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 11, 2012.  (A.R. 17).  Neither party disputes this determination.

#### 2.  Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following severe impairments: (i) diabetes mellitus; (ii) hypertension; (iii) chronic pain syndrome; (iv) degenerative joint disease of the hip; (v) post-traumatic stress disorder ("PTSD"); (vi) depression; and (vii) anxiety. (A.R. 17).  This determination is unchallenged.

#### 3.  Step Three: Presence of Listed Impairment(s)

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations.  (A.R. 18).  Neither party disputes the ALJ's determination at this step.

#### 4.  Step Four:  Capacity to Perform Past Relevant Work

At Step Four, the ALJ concluded that Plaintiff had no past relevant work.  (A.R. 27).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that:

> [Plaintiff] is able to occasionally crawl, kneel, crouch, stoop, and climb ramps and stairs, but should never be required to climb ladders, ropes, or scaffolds.   [Plaintiff] is able to perform simple, unskilled, and concrete work tasks, occasionally interact with co-workers and supervisors, but can still be in vicinity of others.   [Plaintiff] should not work with the public.   [Plaintiff] is able to tolerate occasional changes in the work setting.

(A.R. 22).   Plaintiff argues that the ALJ improperly weighed the evidence in assessing her RFC.

### 5.  Step Five: Capacity to Perform Other Work

At the administrative hearing, a vocational expert ("VE") testified that based on Plaintiff's RFC, Plaintiff would be able to perform the requirements of representative occupations such as a housekeeper.  (A.R. 55).  The ALJ found that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles and that the jobs identified by the VE existed in significant numbers in the national economy.  (A.R. 27).  After considering the VE's testimony, Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff can make a successful adjustment to other work and is therefore not disabled.  (A.R. 27-28).

### C.  Plaintiff's Challenge to the ALJ's RFC Determination

#### 1.  The ALJ's Rejection of Plaintiff's Testimony Concerning her Symptoms

When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The plaintiff does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms.  Rather, a plaintiff must only show that it could have caused some degree of the symptoms.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first step, and there is no affirmative evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; see also 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. See 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).

The Social Security Administration recently issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"). SSR 16-3p eliminates the term "credibility" used in SSR 96-7p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. That is, "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, ---F.3d ----, 2016 WL 3997246, at *1 (7th Cir. July 26, 2016) (emphasis in original).

Although SSR 16-3p was issued almost two years after the ALJ's February 2014 decision, it is consistent with Social Security's prior policies and with prior Ninth Circuit case law. *Compare* SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). Because 16-3p clarifies rather than changes existing law,[4] the Court will consider the ALJ's evaluation of Plaintiff's subjective complaints in light of SSR 16-3p.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (A.R. 22). As discussed below, the ALJ did not commit harmful error in discounting Plaintiff's symptom testimony. Because the Court finds that the ALJ's reasons for discounting Plaintiff's symptom testimony are clear and convincing, the Court does not decide the parties' dispute as to whether the record contains affirmative evidence of malingering. (Doc. 23 at 4; Doc. 28 at 7).

### i. Alleged Symptoms Pertaining to Plaintiff's Physical Impairments

The ALJ's reasons for discounting Plaintiff's testimony regarding her alleged symptoms pertaining to her <u>physical</u> impairments include the following:

1.    Jeffery Levinson, M.D. raised concerns as to whether Plaintiff was exaggerating or "even malingering her condition." (A.R. 438). For instance, Dr.

---

[4]Administrative rules will not have retroactive effect unless (i) Congress expressly authorized the administrative agency to enact retroactive rules and (ii) the new agency rule states that it is retroactive. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). A clarification of a regulation, however, does not raise issues about retroactivity. *See Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (stating that a clarifying rule "can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand," and does not raise issues of retroactivity); *see also Smolen*, 80 F.3d at 1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law . . . .").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Levinson stated that "[s]ensation to light touch and pinprick is intact in the upper and lower extremities, though there are inconsistent findings on repeat testing, indicating again some deception on the part of the claimant." (A.R. 23, 437). Evidence of symptom exaggeration is a valid basis for discounting a claimant's credibility. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (claimant's "tendency to exaggerate" was a valid reason for discounting the claimant's symptom testimony); *Bickell v. Astrue*, 343 F. App'x 275, 277 (9th Cir. 2009) ("Inconsistencies and a tendency to exaggerate provide a valid basis for discrediting the testimony of a claimant.").

2.   The ALJ noted that although the results of a magnetic resonance imaging ("MRI") test performed on Plaintiff's cervical spine in May 2012 showed "minimal deformity" at C3-C4 and "slight deformity" at C5-C6,[5] the attending physician (William Stevens, M.D.) did not recommend cervical surgery "given the nature of [Plaintiff's] complaints, and the length and course of her symptoms, as well as the absence of significant nerve root compression or spinal cord compression . . . ." (A.R. 23, 389, 392). In addition, Plaintiff's June 2013 MRI showed stable cervical and lumbar spine findings, and based on the MRI, Dr. Naftaly Attias concluded that Plaintiff was not a candidate for surgical intervention. (A.R. 23, 475). "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

3.   The ALJ observed that Dr. Stevens' physical examination of Plaintiff in June 2012 did not reflect remarkable findings, which is consistent with Dr. Bilal Shanti's examination in January 2012. (A.R. 23, 388, 314). The ALJ also noted that Plaintiff's November 2012 electromyography ("EMG") test was normal. (A.R. 23, 458). A March 22, 2013 examination by Dr. Attias did not reveal any remarkable findings even though Plaintiff complained of 10/10 cervical pain. (A.R. 23, 434). The ALJ properly considered the lack of objective medical evidence supporting Plaintiff's claimed

_____

[5] The ALJ's decision erroneously states "C4-C5" instead of "C5-C6." This error is harmless.

limitations as one of the factors in weighing Plaintiff's credibility. *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

4.   The ALJ observed that although Dr. Attias recommended in 2013 that Plaintiff obtain an EMG, Plaintiff did not comply with that recommendation.  (A.R. 23).  Dr. Attias recorded that "Patient was educated of the importance of doing the nerve conduction study since . . . her weakness is not explained by an[] MRI."  (A.R. 483).  Dr. Attias later noted "Patient did not do [] nerve conduction study."  (A.R. 480).  Ninth Circuit precedent provides that "an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony."  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Burch*, 400 F.3d at 681 (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell*, 947 F.2d at 346 (non-compliance with prescribed course of treatment is a relevant factor in assessing credibility).

5.   The ALJ acknowledged that Plaintiff has been diagnosed with hypertension after complaining of chest pain, but concluded that the condition "appears to be under control as [Plaintiff] has offered no evidence of heart attack, stroke, end organ failure, or related symptoms . . . ."  (A.R. 24, 291-92, 469-71).  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling).

### ii.   Alleged Symptoms Pertaining to Plaintiff's Mental Impairments

The ALJ's reasons for discounting Plaintiff's testimony regarding her alleged symptoms pertaining to her <u>mental</u> impairments include the following:

1.   The ALJ stated that Plaintiff "has never been psychiatrically hospitalized, been subjective to regular mental health treatment for non-acute symptoms, or engage in

mental health treatment not solely focused on obtaining psychotropic medication."[6] (A.R. 19). The ALJ noted that Plaintiff only met with her mental health providers ten times since February 2012 through February 2014. (*Id.*).

Failing to seek treatment for a mental disorder may not be a sufficient sole basis on which to discount a claimant's testimony since "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation and quotation omitted). However, the ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *See Burch*, 400 F.3d at 681; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (the amount and type of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms"). The ALJ correctly observed that Plaintiff did not allege disability related to mental impairments when she applied for benefits and reported leaving her prior job due to physical injury, not psychological impairment. (A.R. 20, 217, 380). There is no evidence that Plaintiff's failure to seek mental health treatment was the result of a mental disorder. Based on the record, the ALJ reasonably considered Plaintiff's lack of extensive mental health treatment in determining that Plaintiff's alleged symptoms pertaining to her mental health issues would not preclude Plaintiff from working.

2. The ALJ also noted that Plaintiff denied experiencing anxiety, depression, difficulty sleeping, hallucinations, nervousness, panic attacks, or paranoia during physical

---

[6] Plaintiff states that the ALJ's statement that Plaintiff has never been "subjective [sic] to regular mental health treatment for non-acute symptoms" is nonsensical. (Doc. 22 at 22). But in subsequent paragraphs, the ALJ stated that "[t]he record does reflect the claimant sought mental health treatment to obtain psychotropic medication in order to help with grieving from the loss of her son. . . . "[T]he record suggests this is an acute exacerbation of mental health symptoms that would be expected to significant [sic] affect anybody in such a circumstance, but not reflective of a baseline mental functioning." (A.R. 19). The ALJ also stated that "even considering [Plaintiff's] acute grieving, these records do not suggest disabling impairment." (*Id.*). Reading the ALJ's decision as a whole, the Court infers that the ALJ was highlighting that the record does not show a history of mental health treatment prior to the death of Plaintiff's son. *See Magallanes*, 881 F.2d 747, 755 (9th Cir. 1989) (a reviewing court may draw specific and legitimate inferences from an ALJ's opinion).

examinations.  (A.R. 19, 307, 310, 434, 571).  Based on the record, the Court does not find that the ALJ relied on a "few short-lived periods of temporary improvement" in evaluating the severity of Plaintiff's mental health symptoms.  *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (finding that ALJ "improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [a claimant]").  Instead, the ALJ properly observed inconsistencies in Plaintiff's reported symptoms.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (the ALJ can consider many factors when evaluating a claimant's credibility, such as claimant's prior inconsistent statements concerning her symptoms).

3.  The ALJ also discussed other inconsistent statements Plaintiff made to mental health providers.  For instance, Plaintiff reported to Nurse Practitioner ("NP") Joanne Baron that she was able to help her children and could control her grief until the children left for school, which conflicts with her statement to consulting psychologist Ronn Lavit, Ph.D that she sleeps from 4:00 a.m. to 11:00 a.m. (A.R. 21, 416, 446).

### iii.  The ALJ Provided Specific, Clear, and Convincing Reasons for Discrediting Plaintiff's Testimony

The ALJ's credibility finding in this case is unlike the brief and conclusory credibility findings that the Ninth Circuit Court of Appeals has deemed insufficient in other cases.  *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).  Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible.  The ALJ thoroughly discussed the evidence and explained the inconsistencies in the record that he found discredited Plaintiff's testimony.  It is possible that a different ALJ would find Plaintiff's symptom testimony credible.  But it is not the Court's role to second-guess an ALJ's decision to disbelieve a Plaintiff's allegations.  *Fair*, 885 F.2d at 603 ("An ALJ cannot be required to believe every allegation of

disabling pain, or else disability benefits would be available for the asking . . . ."). Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Morgan*, 169 F.3d at 599. The Court finds that the ALJ's reasons discussed above for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record.[7] The Court therefore finds that the ALJ did not err in discrediting Plaintiff's subjective testimony concerning her symptoms.

### 2. The ALJ's Weight Given to Examining Psychologists Ronn Lavit, Ph.D., Michael Rabara, Psy.D., and NP Joanne Baron

Plaintiff argues that the ALJ committed harmful error in weighing the opinions of Ronn Lavit, Ph.D, Michael Rabara, Psy.D, and NP Joanne Baron. (Doc. 22 at 14-19).

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must provide clear and convincing reasons that are supported by substantial evidence for rejecting the uncontradicted opinion of a treating or examining doctor. *Id.* at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ cannot reject a treating or examining physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as

---

[7] Not all of the ALJ's reasons for discounting Plaintiff's testimony have been discussed herein. To the extent other reasons provided by the ALJ in discounting Plaintiff's testimony that are not discussed are not legally sufficient and/or supported by substantial evidence, the ALJ's reliance on those reasons is harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (concluding that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but finding error harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record); *Tommasetti*, 533 F.3d at 1039 (upholding adverse credibility determination where the "ALJ provided several permissible reasons").

a whole); *see also Batson*, 359 F.3d at 1195; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

### i. Dr. Ronn Lavit, Ph.D.

On April 24, 2013, Ronn Lavit, Ph.D. evaluated Plaintiff and provided a psychological report.  (A.R. 443-49).  Dr. Lavit diagnosed Plaintiff with PTSD, panic attacks, and depressive disorder.  (A.R. 448).  In his Psychological/Psychiatric Medical Source Statement, Dr. Lavit opined that Plaintiff "would likely be very limited in carrying out complex instructions and may not be able to maintain regular attendance given her background and her level of depression and anxiety."  (A.R. 449).  Dr. Lavit also opined that Plaintiff is "isolated at the present time and has not assimilated into Western society. She is likely to have difficulty with coworkers, difficulty responding appropriately to supervision."  (*Id.*).

Dr. Lavit's report is contradicted by the opinions of non-examining State agency medical consultants Mary Downs, Ph.D and Sheri Simon, Ph.D.  (A.R. 80-82, 397-414; As a result, the ALJ must provide specific and legitimate reasons based on substantial evidence for discounting Dr. Lavit's opinion.[8]  *See Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by a nonexamining physician, only for "specific and legitimate reasons that are supported by substantial evidence in the record."); *Mendoza v. Astrue*, 371 F. App'x 829, 831 (9th Cir. 2010) ("An ALJ may reject an opinion of an examining

---

[8] Plaintiff argues that the "standard that requires clear and convincing reasons for rejecting uncontradicted examining source assessments should apply in this case, because the ALJ did not rely on any *substantial* evidence that contradicted the examining psychologists' assessments."  (Doc. 22 at 14) (emphasis in original).  However, the Court does not find that the ALJ improperly concluded that Drs. Simon and Downs' opinions are consistent with the objective evidence in the record.  Accordingly, their opinions constitute substantial evidence.  *See Tonapetyan*, 242 F.3d at 1149 (contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record).

physician, if contradicted by a non-examining physician, as long as the ALJ gives "specific and legitimate reasons that are supported by substantial evidence in the record.").

The ALJ indicated that "only some weight was afforded [to Dr. Lavit's opinions] and only to the extent that such opinion supports the opinion of the DDS."  (A.R. 25).  Although the ALJ agreed with Dr. Lavit that Plaintiff has certain functional limitations, the ALJ found that "Dr. Lavit's assessment is not specific enough to allow [the ALJ] to properly evaluate the opinion as terms such as 'difficult' and 'limited' are meaningless without specific definition, or at least additional qualification that can translate into quantifiable limitation."  (*Id.*).  The ALJ also found that Dr. Lavit's opinion "appears to be based solely on [Plaintiff's] subjective complaint[s] . . . ."  (*Id.*).

A medical source's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted.  *Tommasetti*, 533 F.3d at 1041 (An ALJ may reject an opinion that is "largely based" on a claimant's non-credible self-reports); *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  Throughout Dr. Lavit's report are statements such as "[Plaintiff] stated that currently she does not care about anything . . . ."; "Interpersonally, she describes herself as isolated . . . ."; "She states she has a terrible memory and forgets recent things . . . ."; "She reports having significant anxiety . . . .";  "In terms of her depressive symptoms, she states that she is always sad, that she has no energy . . . ." (A.R. 445).  The ALJ reasonably concluded that Dr. Lavit's opinions were primarily based on Plaintiff's self-reports.  Accordingly, because the ALJ did not err in discounting Plaintiff's symptom testimony, the ALJ properly discounted Dr. Lavit's report on the basis that it was based on Plaintiff's own descriptions of her symptoms.

### ii.  Michael Rabara, Psy.D.

On June 18, 2012, Michael Rabara, Psy.D. conducted a psychological evaluation of Plaintiff.  (A.R. 380-83).  Dr. Rabara diagnosed Plaintiff with PTSD and depressive disorder.  (A.R. 383).  Dr. Rabara also conducted a Comprehensive Test of Nonverbal

Intelligence.  Although Plaintiff's scores on the test were very low, Dr. Rabara stated that "they are considered an underestimate of [Plaintiff's] actual abilities.  Her performance is believed to have been affected by emotional distress, cultural and language factors, and perhaps even pain distractibility."  (*Id*.).  In his Psychological/Psychiatric Medical Source Statement, Dr. Rabara opined that Plaintiff would have mild difficulty remembering simple instructions, moderate difficulty remembering detailed instructions and work-like procedures, and moderate difficulty carrying out simple instructions and making simple decisions.   (A.R. 384).   Dr. Rabara also opined that Plaintiff would have severe difficulties in a number of areas, including carrying out detailed instructions, sustaining her concentration, working at a consistent pace, interacting with others, and responding appropriately to work setting changes.  (*Id*.).  For the reasons discussed in the preceding section, the ALJ cannot discount Dr. Rabara's opinions without providing specific and legitimate reasons based on substantial evidence.

The ALJ gave "some weight" to Dr. Rabara's opinions.  (A.R. 25).  The ALJ provided two reasons for not giving Dr. Rabara's opinions full weight.  The ALJ first noted that Dr. Rabara's evaluation was "conducted just five months after [Plaintiff's] loss of her son and prior to significant improvement, as evidenced by Dr. Lavit."  (*Id*.).  However, the ALJ did not discuss how Dr. Lavit's report showed significant improvement.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.")  (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).  In addition, Dr. Rabara made his assessment after acknowledging that Plaintiff's "21-year old son was reportedly stabbed to death about 6 months ago."  (A.R. 380).  The ALJ has failed to sufficiently explain how Plaintiff's recent loss of her son undermined Dr. Rabara's conclusions that Plaintiff has a number of severe limitations that may preclude her ability to work.

As a second reason for giving Dr. Rabara's opinions only "some weight," the ALJ wrote that "Dr. Rabara noted that [Plaintiff] was not fully engaged and appeared to be producing variable effort during testing, suggesting that [Plaintiff's] true functional capacity was greater than alleged." (A.R. 25). Dr. Rabara stated that Plaintiff "seemed to put forth an adequate effort. She was compliant, but her effort, interest, and performance all seemed variable. She was unable to provide any correct responses on one subtest after accurately completing the sample items, but on other subtests she provided several successive correct responses." (A.R. 382). Dr. Rabara also stated that Plaintiff's performance is "believed to have been affected by emotional distress, cultural and language factors, and perhaps even pain distractibility." (A.R. 383). Reading Dr. Rabara's report as a whole, Dr. Rabara's comment that Plaintiff provided a "variable effort" is not a specific and legitimate reason for discounting Dr. Rabara's opinions that Plaintiff would have severe difficulties in a number of functional areas. An ALJ must not insert his or her interpretation of the results in place of an examining psychologist's opinion. *See Reddick, supra,* 157 F.3d at 725 (citations omitted); *See also Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted).

The ALJ has failed to provide specific and legitimate reasons based on substantial evidence for discounting Dr. Rabara's opinions. This is a harmful error that requires remand for the reasons discussed in Section II(D) below.

### iii.  NP Joanne Baron

A source that is not an acceptable medical source is considered to be an "other source." 20 C.F.R. 404.1513(d). "Other sources" include physician assistants, nurse practitioners, and lay witnesses. 20 C.F.R. § 404.1513. Information from these "other

sources" must still be considered even though the information cannot establish the existence of a medically determinable impairment. *Id.* An other source's opinion can be rejected as long as the ALJ provides "germane" reasons, such as finding that the opinion is inconsistent with medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

The ALJ gave no weight to a one-page "Medical Information" form completed by Nurse Practitioner ("NP") Joanne Baron on July 22, 2013. (A.R. 26, 574). The ALJ correctly noted that NP Baron's opinion was brief and in a "checkbox" format. For instance, in response to a question pertaining to diagnoses that "would impair employability," NP Baron indicated that Plaintiff has severe depression and PTSD. (A.R. 574). However, NP Baron did not explain how those diagnoses would limit Plaintiff's ability to work. NP Baron answered "Yes" to the question "Can this person stay by themselves," but did not answer the question "If Yes, for how long?" (*Id.*). Similarly, NP Baron checked "yes" in response to the question "Does this person have a mental or physical incapacity which prevents him/her from performing any substantially gainful employment for which he/she is qualified?" But it is not clear from the form what symptom(s) NP Baron found that would prevent Plaintiff from working. Reading the form in context of NP Baron's treatment notes does not add clarity. (A.R. 521-27; 586-94).

The brief and conclusory nature of the opinions in NP Baron's July 2013 "Medical Information" form is a sufficient reason for discounting the opinions. *See Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir. 1996) (an ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions"); *Molina*, 674 F. 3d at 1111 (an ALJ permissibly rejected the opinion of a physician's assistant that was expressed in a "standardized, check-the-box form in which [the physician assistant] failed to provide supporting reasons or clinical findings, despite being instructed to do so."); *see also Batson*, 359 F.3d at 1195 (an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical

findings" or "by the record as a whole"); *Thomas*, 278 F.3d at 957 (stating that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").  To the extent that any of the other reasons the ALJ provided for discounting NP Baron's opinions are not legally sufficient, the error is harmless.  *See Molina*, 674 F.3d at 1115 (an ALJ's error in providing both valid and invalid reasons for a finding is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion).

### D.  Remand for Further Proceedings is Appropriate

For the above reasons, the Court finds that the ALJ improperly weighed Dr. Rabara's opinions.  This error is not inconsequential and requires remand.  *See Brown-Hunter*, 806 F.3d at 492 (explaining that Ninth Circuit "precedents have been cautious about when harmless error should be found" and have emphasized that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court") (citations omitted); *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (explaining that in reviewing an ALJ's decision for legal error, "[w]e are constrained to review the reasons the ALJ asserts" and "we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted).

Because the ALJ has committed harmful error in making his RFC determination, the final issue raised in Plaintiff's Opening Brief is moot (whether the ALJ's assessment that Plaintiff could perform "simple, unskilled, and concrete work tasks" was consistent with the ALJ's finding at Step Two that Plaintiff had moderate limitations in concentration, persistence, and pace).  Nevertheless, the Court finds that any error in not including moderate limitations in concentration, persistence, and pace in the RFC assessment is harmless.  This is because Drs. Simon and Downs opined that even though Plaintiff has moderate limitations in concentration, persistence, and pace, Plaintiff could perform simple, routine, unskilled work.  *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169,

1174 (9th Cir. 2008) (holding that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony" and finding that the ALJ properly "translated [the claimant's] condition, including the pace and mental limitations, into the recommendation by the State agency reviewing psychologist that the claimant be restricted to "simple tasks"); *Bruesch v. Colvin*, 609 F. App'x. 481, 482 (9th Cir. 2015) (ALJ did not err where the ALJ found that the claimant was limited to "understanding, remembering and carrying unskilled instructions," but in the ALJ's hypothetical question to the VE, the ALJ described a person who "would be limited to unskilled work"; two other psychologists concluded that despite the claimant's limitations in concentration, persistence, or pace, the claimant could perform her past relevant work); *Lawhorn v. Colvin*, 609 F. App'x 449, 450 (9th Cir. 2015) (where physician stated that claimant had difficulty concentrating but could perform "simple and repetitive tasks as well as more detailed and complex ones," the ALJ's RFC finding that the claimant could perform simple, routine tasks was not erroneous even though the ALJ found at step three that the claimant had moderate limitations in concentration, persistence, and pace);  *Sabin v. Astrue*, 337 F. App'x 617, 620-21 (9th Cir. 2009)  (ALJ's RFC finding that claimant could perform simple and repetitive tasks was consistent with medical reports and adequately captured the tasks that the claimant could do despite moderate limitations in concentration, persistence, and pace).

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (citations and internal quotation marks omitted).  A district court may remand directly for an award of benefits only when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true,

1   the ALJ would be required to find the claimant disabled on remand."  *Garrison*, 759 F.3d

2   at 1020.  Even if these requirements are met, the court retains "flexibility" to remand "on

3   an open record for further proceedings when the record as a whole creates serious doubt

4   as to whether the claimant is, in fact, disabled within the meaning of the Social Security

5   Act."  *Dominguez*, 808 F.3d at 407-08.

6        It is appropriate to remand this matter to the Commissioner for further proceedings

7   as the record creates a serious doubt as to whether Plaintiff suffers from any impairments

8   that would preclude her from working.  As discussed above, the ALJ did not improperly

9   discount Plaintiff's testimony concerning her physical and psychological impairments.

10   The ALJ also did not improperly discount Dr. Lavit and NP Baron's opinions, and

11   Plaintiff has not challenged the weight given to the opinions of Plaintiff's other medical

12   providers.  In addition, there is evidence in the record that suggests that Plaintiff is

13   capable of engaging in substantial gainful activity.  For instance, a March 22, 2013

14   medical record from Dr. Attias states:  "Pt is currently working.  Pt has not missed work

15   due to symptoms.  Pt has not modified work because of symptoms."  (A.R. 431-32).  Yet

16   the medical record indicates that Plaintiff completed an Oswestry cervical questionnaire

17   in which Plaintiff reported for Section 7-Work "I can hardly do any work at all."  (A.R.

18   432).  This contradiction adds to the numerous disconcerting inconsistencies in the record

19   noted by the ALJ.[9]

20                              **III.  CONCLUSION**

21        Based on the foregoing,

22        **IT IS ORDERED** reversing the decision of the Commissioner of Social Security

23   and remanding for further administrative proceedings.  The ALJ shall issue a new

24   decision that is consistent with the applicable law as set forth in this Order. The ALJ,

25

26   _____

27   [9] For instance, the ALJ observed that NP Baron lowered Plaintiff's Global
     Assessment of Functioning score from 54 to 45 after NP Baron noted mental health
28   improvement.  (A.R. 20).  The ALJ also observed that Plaintiff's "height and weight
     seem to be in constant flux throughout the record, ranging in height from 5' on April 8,
     2011, to 5'7" in November 2011, and ranging in weight from 90 to 171 pounds."  (*Id.*).

however, is not precluded from reopening the hearing to receive additional evidence if deemed appropriate.  The Clerk of Court shall enter judgment accordingly.

Dated this 10th day of August, 2016.

Eileen S. Willett
United States Magistrate Judge